

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

January 19, 1967

Honorable Jerry Sadler
Commissioner
General Land Office
Austin, Texas

Opinion No. M-9

Re: Whether the Veterans'
Land Board has the author-
ity to permit a veteran
purchaser, at this time,
to substitute a different
tract of land in lieu of
the tract covered in a
commitment issued by the
Board prior to December 1,
1965.

Dear Mr. Sadler:

Your request for opinion of this office presents the question as follows:

"At the present time we still have pending a
few transactions that were committed on, prior
to December 1, 1965, but due to the condition
of the title to tracts of land, through no fault
of the veteran purchaser, certain defects in the
title of the tracts of land under contract, can-
not, as a practical matter, be cured to the satis-
faction of the Veterans' Land Board.

"Since the commitment was issued to a veteran
purchaser covering a tract of land prior to December
1, 1965, could the Veterans' Land Board, if they
so desired, under the Veterans' Land Act permit
a veteran purchaser at this time to substitute
a new tract of land and apply the prior commit-
ment to the new tract of land having marketable
title."

The "Application and Contract of Sale", supplied by the
Veterans' Land Board, to be executed in each transaction by
both the seller and the veteran purchaser contains the
following provisions, towit:

- 26 -

1.  In paragraph 8 thereof, the contract provides, in part, that:

"If this contract is assigned to the Veterans'
Land Board the Board will appraise the above de-
scribed property and issue a letter of commitment to
the veteran and seller disclosing the conditions
under which the title will be accepted and the
amount, . . . which the Veterans' Land Board
will pay for said property."

2. In paragraph 11 thereof, in providing for proof of good and sufficient title, the contract provides, in part, that:

"If such defects are not cured within a reason-
able length of time, the buyer may reject the
title and refuse to purchase said land or may,
if the defects can be cured, have same done
at the expense of the seller."

Further, it is understood that your customary commitment letter provides basically that:

"Your application to purchase _____ acres of land
in _____ County has been approved for the
sum of _____($_____), subject to the de-
livery and approval of a good and sufficient title
by warranty deed, and final confirmation by action
of the Chairman of the Veterans' Land Board. . . ."

Such commitment is addressed to the purchase of the specific tract or tracts of land described in the Application and Contract of Sale and is conditioned upon the approval by the Board of good and sufficient title to said property in the seller.  In cases where the title is not shown to be good and sufficient, upon the refusal of the Board to accept such title as the seller can produce, and in the absence of the curing of the defects at the seller's expense, said contract of sale and the commitment in conjunction therewith, under the terms of the contract is rendered null and void and of no further force and effect insofar as the Board is concerned.

If, under such circumstances, a veteran purchaser is to proceed with the purchase of another tract of land through the Veterans' Land Board, a new contract of sale must, in effect, be negotiated, executed and assigned to the Board and a new commitment issued by the Board.  This is a

materially different state of facts from those set out in Attorney General's Opinion No. C-352(1964), wherein this office expressed the opinion that the completion of a transaction after December 1, 1965, was authorized when the contract for the sale of the specific tract involved was negotiated, executed and assigned to the Board and the Board's commitment thereon issued prior to December 1, 1965.

Article III, Section 49-b of the Constitution of the State of Texas provides, in part, as follows:

"The lands of the Veterans' Land Fund shall be sold by the State of Texas to Texas veterans. . . as may be included within this program by legislative Act, in such quantities, and on such terms, and at such prices and rates of interest, and under such rules and regulations as are now provided by law, or as may hereafter be provided by law."

Article 5421m, Section 9(a), Vernon's Civil Statutes, provides, in part, as follows:

". . .After December 1, 1965, all moneys received by the Veterans' Land Board under the terms of this Act, or so much thereof as may be necessary, shall be set aside and used to pay principal and interest on bonds then outstanding as they mature. When there is in the Veterans' Land Fund an amount fully sufficient to pay all interest on, and principal of, the outstanding bonds due and to become due thereafter, any moneys in excess of such amount shall be deposited to the credit of the General Fund of the State of Texas to be appropriated to such purposes as may be prescribed by law. The moneys so set aside and not deposited to the credit of the General Revenue Fund may be invested by the Board in bonds or other obligations of the United States, or the State of Texas, or of the several counties or municipalities, or other political subdivisions of the State of Texas, and such Board may sell such securities, or any of them, at the governing market rate."

Section 10 of said Article 5421m, provides, in part, as follows:

"Until December 1, 1965, the Veterans' Land Fund, except a sufficient amount to pay the interest and principal due on outstanding bonds, shall be used by the Board for the purpose of purchasing land situated in this State. . . ."

From the above cited constitutional and statutory provisions it is apparent that December 1, 1965 is a termination date, after which the Veterans' Land Board is without authority to accept assignment or transfer of applications and contracts of sale and to issue new commitments based thereon.

It is the opinion of this office that to substitute, at this time, other lands for the land described in the contract of sale and referred to in the commitment of the Board would, in effect, require the negotiation, execution and assignment of a new contract of sale as well as the issuance of a new commitment at a date subsequent to December 1, 1965, and that the Veterans' Land Board is without authority to do so or to expend funds from the Veterans' Land Fund in pursuance thereof.

## S U M M A R Y

The Veteran's Land Board does not have the authority to permit a veteran purchaser, at this time, to substitute a different tract of land in lieu of the tract covered in a commitment issued by the Board prior to December 1, 1965.

Yours very truly,

CRAWFORD C. MARTIN
ATTORNEY GENERAL OF TEXAS

Prepared by Harold G. Kennedy
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
W. V. Geppert, Co-chairman
Arthur Sandlin
Malcolm Quick
James Quick

STAFF LEGAL ASSISTANT
A. J. Carubbi